**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilbert Mota, | No. CV-17-00555-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Gilbert Mota brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises seven issues on appeal: 1) whether substantial evidence supports the Commissioner's finding that Plaintiff has substance abuse disorder; 2) the Commissioner failed to consider the treating provider's opinion; (3) the Commissioner failed to give controlling weight to portions of the treating physician's opinion and failed to provide specific and legitimate reasons to assign the opinion little weight; 4) whether substantial evidence supports the finding that Plaintiff's mental impairments were non-severe at Step Two; 5) the Commissioner failed to provide clear and convincing reasons to find Plaintiff partially credible; 6) whether substantial evidence supports the Commissioner's finding that three jobs were appropriate and available for Plaintiff's residual functional capacity ("RFC"); and 7) whether the Commissioner failed to follow the Appeals Council's remand order. (Doc. 18). Plaintiff requests that this matter be remanded for an award of benefits. Defendant concedes that the ALJ committed error but

1  contends that the appropriate remedy is a remand for further administrative proceedings.

2  Before the Court are Plaintiff's Opening Brief, Defendant's Response, and

3  Plaintiff's Reply. (Docs. 18, 22, & 25). The United States Magistrate Judge has received

4  the written consent of both parties and presides over this case pursuant to 28 U.S.C. §

5  636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the

6  Court finds that this matter should be reversed and remanded for an award of benefits.

7  ## I.  Procedural History

8  Plaintiff filed a Title XVI application for social security disability benefits on March

9  8, 2012. (Administrative Record ("AR") 248). Plaintiff alleged disability beginning on

10  August 6, 2008 based on severe back injury and antisocial personality disorder. (AR 97).[1]

11  Plaintiff's application was denied upon initial review (AR 110) and on reconsideration (AR

12  111). A hearing was held on March 12, 2014 (AR 70), after which ALJ Lauren Mathon

13  found that Plaintiff was not disabled because he could perform his PRW as a bouncer and

14  bartender. (AR 139–40). The ALJ also made an alternate finding at Step Five that Plaintiff

15  could perform other work existing in the national economy. (AR 140–41). Plaintiff

16  appealed this decision, and on September 22, 2015 the Appeals Council issued an order

17  remanding the case back to an ALJ. (AR 147).[2]

18  Two more hearings were held on March 28, 2016 (AR 61) and September 21, 2016

19  (AR 39), after which ALJ Peter Baum found that Plaintiff was not disabled because

20  substance use was a contributing factor material to the determination of disability, and if

21  Plaintiff stopped the substance use, he would not be disabled and would be able to perform

22  other work existing in the national economy. (AR 28–30). On September 12, 2017 the

23  Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

24  ---

[1] At the hearing before the ALJ on March 12, 2014, Plaintiff amended his alleged onset
25  date to February 18, 2010. (AR 128, 202).
[2] The Appeals Council directed the ALJ to resolve the following issues: the hearing
26  decision found Plaintiff's depression to be non-severe but did not address the records from
Integrative Pain Control Center assessing Plaintiff as very low functioning with a GAF
27  score of 55 and a prominent behavioral and psychiatric history, or records from COPE
noting Plaintiff's problems with anger and depression; Plaintiff's council submitted new
28  records of his attempted suicide; RFC was inconsistent with finding that Plaintiff could do
medium work; and the hearing decision did not address Dr. Anderson's opinion, which was
inconsistent with medium work.

Plaintiff's date last insured ("DLI") for DIB purposes is September 30, 2012. (AR 97). Thus, in order to be eligible for benefits, Plaintiff must prove that he was disabled during the time period of his amended AOD of February 18, 2010 and his DLI of September 30, 2012.

## II.    Factual History[3]

Plaintiff was born on July 27, 1971, making him 38 years old at the AOD of his disability. (AR 97). He has a GED and past relevant work as a doorman/bouncer and construction laborer. (AR 276).

### A.    Treating Physicians

Plaintiff has received mental health services at COPE since 2009.

At his initial assessment on August 6, 2009 Plaintiff reported needing help with his anger, stress, depression, and relationship problems. (AR 723). He reported using alcohol and cocaine as an outlet to relieve stress but only uses them when things aren't going well and denied having a problem. (AR 724). Plaintiff was assessed at risk for continued use or relapse but said he wanted to learn more effective coping skills. (AR 726). Plaintiff reported recent thoughts about harming himself and had friends who committed suicide. (AR 727–28). Plaintiff also reported a history of violence, getting into fights, being in a gang, and being incarcerated for attempted murder. (AR 728). Plaintiff's diagnosis was depression, alcohol abuse, and cocaine abuse, with a GAF score of 62 (mild symptoms). (AR 731–32).

On October 19, 2009 Plaintiff had a flat affect and reported problems with controlling impulses to act on anger and verbal hostility. (AR 642).

At a November 18, 2009 psychiatric evaluation Plaintiff reported significant issues with anger management, easily agitated and irritated, poor impulse control, mood swings, feels down and depressed, worries a lot and is anxious, and history of suicidal ideation.

---

[3] While the undersigned has thoroughly reviewed the voluminous record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal. The Court does not note every mental health appointment, nor has the Court summarized Plaintiff's extensive treatment for his back condition or his medical care following his overdose and stroke.

(AR 635). Plaintiff last used meth 2 years ago and last used cocaine 9 months ago, and currently used alcohol occasionally. On exam Plaintiff had an angry affect and was easily frustrated and agitated; the impression was antisocial personality traits and complicated legal history, most likely mood disorder on bipolar spectrum.

On December 28, 2009 Plaintiff reported a lot of problems with anger at work and at home; he stopped taking Risperdal because it made him too sedated and he didn't feel good. (AR 628). The clinical impression was history of substance abuse (urine screen positive for opiates but Plaintiff denied use) and significant Axis II presentation (antisocial personality disorder). It was recommended Plaintiff discontinue Ambien and Risperdal and try Lithium for anger issues.

On January 8, 2010 Plaintiff had a flat affect and reported conflict with a coworker. (AR 680).

On February 18, 2010 Plaintiff was depressed and anxious with flat affect and reported no current use of substances. (AR 670).

On March 9, 2010 Plaintiff reported he was doing well and his medications were working. (AR 668).

On April 14, 2010 Plaintiff was anxious and irritable with restricted affect. (AR 664). He stopped Lithium because of weight gain and felt slightly calmer when on it but not enough to continue taking it. The clinician noted Plaintiff had tried several mood stabilizers but they did not work for him, and prescribed Cymbalta.

On April 23, 2010 Plaintiff was depressed with flattened affect; he tried Cymbalta but it made him more irritable. (AR 663).

On May 5, 2010 Plaintiff reported he stopped taking Cymbalta because it gave him headaches and he did not want to try anything else until after his back surgery. (AR 661).

On June 11, 2010 Plaintiff had a flat affect and was feeling more depressed. (AR 657).

An assessment on July 12, 2010 notes that Plaintiff's diagnoses are mood disorder, alcohol abuse, and cocaine abuse. (AR 743). Plaintiff wanted to utilize therapy instead of

medications and felt the ones he tried were not effective. (AR 742).

On August 5, 2010 Plaintiff's mood was anxious with a restricted affect. (AR 718). Plaintiff admitted to using alcohol and some cocaine when available but denied recent use. The impression was that Plaintiff's mood was directly related to his pain and frustration with not working and financial difficulties, and Trazadone was prescribed.

On October 29, 2010 Plaintiff had a flat affect but his mood was bright and he was happy his back surgery was approved. (AR 701).

On December 6, 2010 Plaintiff reported he stopped Trazadone because it didn't work. (AR 693).

On March 11, 2011 Plaintiff was less depressed since his back surgery, denied recent cocaine use, gave up alcohol for Lent, and did not want to take psychiatric medication. (AR 778).

An assessment on July 21, 2011 notes that Plaintiff's diagnoses were mood disorder, alcohol abuse (unspecified drinking behavior), cocaine abuse (in remission), amphetamine use (in remission), and antisocial personality disorder. (AR 760). Plaintiff denied any substance use issues and did not present with any withdrawal or overdose symptoms. (AR 761). Plaintiff tried Cymbalta again for his pain and depression, but he felt more agitated and depressed; he did not like taking meds and wanted to try to manage things on his own. (AR 765).

On September 27, 2011 Plaintiff reported he was sober and sleeping better; he had thoughts of suicide one month prior. (AR 753).

On November 9, 2011 Plaintiff was experiencing more pain and limitations, contributing to worsening depression and sleep. (AR 750). He was taking Alprazolam for anxiety and Diazepam and did not want additional medication.

On March 9, 2012 Plaintiff had restricted affect and reported Alprazolam was helpful for anxiety but he was not sleeping well; Ambien was prescribed for sleep. (AR 951–52).

On July 24, 2012 Plaintiff was depressed with restricted affect; upset due to

brother's death last week and feeling anger, sadness, and thoughts of violence. (AR 938).

An assessment on July 30, 2012 notes that Plaintiff was being treated for antisocial personality disorder and major depressive disorder, and that his alcohol, cocaine, and methamphetamine dependence were in remission. (AR 929). Plaintiff takes Zolpidem for insomnia but only sleeps 4–5 hours a night. He recently experienced deaths of his brother, cousin, and friend, and was significantly affected and deeply saddened. (AR 930).

On October 18, 2012 Plaintiff reported he was not doing well, problems with his wife, and hit a wall in anger. Plaintiff was depressed and irritable with restricted affect; he did not want to try medication for mood because he tried several in the past that did not help. (AR 923).

On November 28, 2012 Plaintiff reported his anger had improved since coming to COPE in 2009 and Vistaril was helpful. (AR 918). Plaintiff also reported feeling restless, having thoughts that he might die if he goes to sleep, increased depression, decreased appetite, and thoughts of harming himself. (AR 919).

On December 7, 2012 Plaintiff had an individual therapy assessment and stated he wanted help to manage his anger and rid himself of suicidal thoughts. (AR 913).

On December 26, 2012 Plaintiff reported depression still an issue; felt suicidal one time last month and felt medication was helpful for this. (AR 911–12).

Plaintiff continued to receive services through COPE in 2013 and 2014, and progress notes document improved symptoms at times but also continued struggles. For example, on August 28, 2013 Plaintiff reported he was doing somewhat better but also having suicidal thoughts and hearing voices telling him to harm himself and others. (AR 1088). On January 31, 2014 Plaintiff reported he felt irritable and jumpy on Zoloft with increased depression, anxiety, and insomnia, and did not want to try another depression medication. (AR 1164–65). Progress notes from this period reflect that Plaintiff's physical pain affects his mood and makes him agitated, tense, angry, anxious, and depressed. *See e.g.*, AR 1078, 1092.

Plaintiff also reported anxiety and depression to his PCP, Dr. Donnelly, throughout

the treatment record. For example, on August 12, 2011 Plaintiff reported increased depression and some suicidal ideation but did not want to try antidepressants again because of a bad reaction to Cymbalta that made him more depressed. (AR 816). On June 26, 2013 Plaintiff reported he was anxious and did not sleep well, worried about money all the time, and wanted to return to work to support his family; Dr. Donnelly increased Xanax for anxiety and insomnia. (AR 993, 996).

On December 21, 2012 Integrative Pain Center of Arizona assessed Plaintiff as very low functioning with a GAF score of 55; he had a "very prominent behavioral/psychiatric history" and was noted as a passive danger to staff. (AR 905–06). Significant barriers to treating pain were anger, anxiety, poor coping style, depressive disorder, pain complaints, inactivity, insomnia, chronic maladjustment, unemployment, litigation, smoker, somatic pain complaints, substance abuse, suicidal ideation, and unrealistic treatment expectations. (AR 907–08).

On May 3, 2014 Plaintiff was admitted to St. Mary's hospital after a suicide attempt. (AR 1236–1314). He was discharged on May 15, 2014 to inpatient rehabilitation with a diagnosis of watershed infarcts secondary to hypoxemia and hypotension associated with drug overdose. (AR 1302). On May 28, 2014 Plaintiff was discharged from rehabilitation with diagnoses of multiple CVAs, anxiety disorder, questionable bipolar disorder, and significant behavioral disturbance. (AR 1280).

On March 17, 2016 N.P. Lori Danker from COPE completed a Mental Work Tolerance Recommendations form. (AR 1361). She opined that Plaintiff had the following limitations: mildly limited in ability to understand and remember short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, maintain socially appropriate behavior, and be aware of normal hazards and take appropriate precautions; moderately limited in ability to carry out short and simple instructions, maintain attention and concentration for brief periods, sustain an ordinary routine without special supervision, and work in proximity or coordination with others without being distracted; markedly limited in ability to remember

locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, make simple work-related decisions, complete a workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without more than the normal rest periods, ask simple questions or request assistance, respond appropriately to changes in the workplace, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (AR 1361–63). Danker indicated these limitations were effective from 2009. (AR 1363).

Plaintiff injured his back at work in 2008 and has received treatment for ongoing pain since that time including physical therapy, medication, surgery, and injections.

A November 7, 2012 letter from Plaintiff's PCP Dr. Donnelly states that Plaintiff has been under her care for the past 2 years, that he suffers from chronic back pain due to an industrial accident and has had 2 back surgeries, and that Plaintiff is disabled and will remain so for the next 12 months. (AR 1030).

On July 23, 2013 Dr. Donnelly completed a Medical Work Tolerance form. (AR 985). She opined that Plaintiff could perform less than full-time sedentary work: stand for 10 minutes for a total of 1 hour per day; sit for 10 minutes for a total of 1 hour per day; walk for 15 minutes at a time for no more than 45 minutes a day; would need to change positions frequently; would miss an average of 10 days per month; could sit in a clerical position, reach above shoulder level, and work with arms extended in front of him for 10 minutes per hour; and could work 2 hours per day, 4 days per week. (AR 985–86). Dr. Donnelly indicated these limitations were ongoing from 2009 to the present. (AR 986).

On February 18, 2014 Plaintiff was voluntarily admitted to St. Luke's Behavioral Health for an opiate detox program with a goal of getting off his narcotic pain medications so that a spinal cord stimulator could be placed in his back for pain management. (AR 1127).

A January 23, 2015 note from Dr. Prust at the Center for Pain Management states

that Plaintiff has recovered nicely from his suicide attempt but was still experiencing back pain. (AR 1220).

A July 21, 2015 letter from Dr. Donnelly states that since suffering a stroke, Plaintiff has residual deficits and motor and psychological impairments, and is completely disabled and unable to work. (AR 1183).

A November 19, 2015 letter from Dr. Prust states that Plaintiff is not capable of testifying due to significant memory problems; he is easily confused and unable to understand questions and communicate. (AR 1184).

B.  State Agency Consulting Physicians

On August 15, 2012 Plaintiff saw Dr. Gwendolyn Johnson for a psychological evaluation. (AR 613). Plaintiff reported a history of depression and anxiety dating back to 2008 and reported anger, irritability, sleep disturbance, low energy, and decreased concentration. (AR 614). He has been enrolled with COPE for the past two years, was diagnosed with bipolar disorder in 2010, and takes alprazolam, diazepam, and zolpidem. Plaintiff reported he has a couple of beers a week and has never had a problem with alcohol, and last used cocaine and methamphetamines 7 years ago. On exam Plaintiff was cooperative with a depressed mood and affect appropriate to mood state. He denied current or past history of suicidal thoughts or attempts. Dr. Johnson diagnosed depressive disorder, likely developed as a result of chronic health problems, and opined that based solely on Plaintiff's present levels of functioning, his prognosis for a successful return to the workforce was good. (AR 615).

C.  Medical Expert Testimony

At the hearing before the ALJ on September 21, 2016, Dr. Sherman testified as a medical expert. She stated that during the relevant period, Plaintiff had the medically determinable mental impairments of affective disorder (mood disorder), somatoform disorder (chronic pain disorder), antisocial personality disorder, and substance abuse disorder (cocaine and alcohol). (AR 43–44). Dr. Sherman noted that the last use of substances was in June or July of 2010; the only mention of substances after that was a

1   detot screen indicating benzodiazepines and opiates; she did not have in her record whether

2   those substances were prescribed. (AR 44).

3       Dr. Sherman testified that Plaintiff did not meet any medical listing as of September

4   30, 2012 and did not equal any listing or combination of the listings. (AR 45). She stated

5   that Plaintiff's mental status exams were generally normal and his GAF scores in the 60s

6   and 70s were mild. (AR 45, 47–48). If Plaintiff continued to use alcohol and cocaine, he

7   would have marked impairments. (AR 45). Otherwise, he would have mild psychiatric

8   functional limitations and could do simple repetitive tasks and more complex tasks. (AR

9   45, 52). She noted Plaintiff said he did not want antidepressant medication, so even if he

10  were prescribed something, it was conceivable he would have no psychiatric limitations.

11  (AR 46–47). When Plaintiff's attorney noted that he was tried on antidepressants and they

12  were not helpful, Dr. Sherman stated that she would have to know more about what was

13  tried, what the side effects were, and dosage. (AR 47). She only knew that Plaintiff did not

14  want antidepressants; she did not know why.

15      D.    Plaintiff's Testimony

16      On a Function Report dated May 10, 2012 Plaintiff reported that he cannot bend at

17  the waist or sit or stand for long periods of time because of back pain, and the pain wakes

18  him up and keeps him from sleeping. (AR 291–92). His parents help him watch his son,

19  and his family doesn't let him do anything that would cause him more pain. (AR 292).

20  Depending on his pain, some days he picks up his son from school, and he can grocery

21  shop for 15 minutes before needing to stop. (AR 292, 294). He uses a back brace and cane

22  daily. (AR 297). Plaintiff gets along ok with authority figures but can get aggressive due

23  to bipolar disorder and has been fired because of problems getting along with others. (AR

24  297).

25      At the hearing before the ALJ on March 12, 2014 Plaintiff testified that prior to

26  separating from his wife in January 2014, he did laundry and dishes. In 2012 he drove his

27  son to school and karate class 2–3 times a week, and Plaintiff rode a stationary bike for 15

28  minutes, 3 times per week, while his son was at karate. (AR 78–79).

Plaintiff stopped drinking alcohol in February 2014 when he attended a detox program on his own accord to stop his narcotic pain medications; prior to that he only drank occasionally. (AR 80–81). He had no problems with alcohol or illegal drugs since his AOD. (AR 80).

Plaintiff stated that Dr. Donnelly was his primary care physician, that he had been seeing her since October 2010, and that out of all his doctors, she knew him and his condition best. (AR 81–82). Plaintiff has been receiving anger management services at COPE for 5 years; he got into a fight at work and was fired because of his anger issues. (AR 82). He gets into verbal altercations with people and with his pain he gets more agitated and his stress level goes up. (AR 83).

Plaintiff was terminated from his last job as a bartender/door man at Chuy's because he couldn't lift the kegs or stand as long as they wanted him to. (AR 83). He can sit for half an hour before needing to stand and move around, and he lies down 4 times a day for 4 hours total. (AR 84). He manages his pain with a TENS unit, a heating pad, a back brace, and his recliner vibrates. (AR 85). Plaintiff testified that he wanted to return to work—that is why he took himself off the narcotics, and he wants to show his son how to be a responsible man. (AR 85–86). He asked Dr. Norton for a release to go back to work, but he wasn't sure what kind of work he could do because he needs to get his pain under control first. (AR 86).

E.    Vocational Testimony

At the hearing before the ALJ on March 12, 2014, Freeman Leif testified as a vocational expert. The ALJ asked Leif to assume an individual of Plaintiff's age and vocational background who could lift 35 pounds frequently and 55 maximum. (AR 89). Leif testified the person could do Plaintiff's past work as a bouncer, bartender, and grave digger. Leif further stated other jobs available would be packager, machine feeder, and laborer. (AR 90). The ALJ then asked Leif to assume an individual who could lift up to 50 pounds and should avoid using a jack hammer and repetitive bending and lifting activities. Leif testified that the person could still do the jobs of packager, machine feeder, and

laborer. (AR 91). The ALJ next asked Leif to assume an individual who could not work full-time at any exertional level, and Leif stated that that would eliminate the ability to work full-time in the general economy. (AR 91). Finally, the ALJ asked Leif to assume an individual who could lift 10 pounds frequently and occasionally, stand/walk 4 hours, sit 6 hours, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally balance, stoop, crawl, and kneel, never crouch, and avoid concentrated exposure to extreme cold, vibration, and hazards. (AR 91–92). Leif testified the person could do jobs including electronic work, assembly, and marker or labeler positions. (AR 92).

On questioning by Plaintiff's attorney, Leif testified that if Plaintiff were only able to work with his arms extended in front of him for 10 minutes per hour, that would eliminate the jobs. (AR 93). Leif further stated that that no employer would tolerate an employee being absent an average of 10 days per month, or needing to lay down 2–4 hours per day, or needing to take unpredictable breaks 4 times per day to use a TENS unit. (AR 92–93).

At the hearing before the ALJ on September 21, 2016, Jeff Farmer testified as a vocational expert. The ALJ asked Farmer to assume an individual of Plaintiff's age at his DLI with the limitations assessed by Dr. Andrews, the state agency reviewing physician: occasionally and frequently lift and carry 10 pounds; stand or walk 4 hours; sit for about 6 hours; unlimited pushing and pulling; occasionally climb ramps and stairs, balance, stoop, kneel, and crawl; never climb ladders, ropes, or scaffolds; never crouch; and avoid concentrated exposure to cold and vibration and moderate exposure to hazardous machinery and heights. (AR 55). Farmer testified the person could not perform Plaintiff's past light work as a bouncer or bartender but could perform other sedentary work including addresser, document preparer, and callout operator. (AR 55–56).

On questioning by Plaintiff's attorney, Farmer testified that if Plaintiff was limited to sitting for 10 minutes in a clerical position, or was limited to working with his arms extended in front of him for 10 minutes per hour, he could not perform the sedentary jobs.

(AR 57). Farmer stated that if an individual is absent two or more times a month, it would preclude full-time competitive employment; an individual absent 10 times a month would be unemployable. (AR 57–58). If an individual was markedly limited—defined as unable to perform a task more than 50 percent of the time—in ability to remember work procedures, perform activities within a schedule, and maintain regular attendance, the person would be unemployable. (AR 58–59). If Plaintiff was limited in his ability to complete a work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without more than the normal rest periods, he would be unemployable. (AR 59).

F.     ALJ's Findings

ALJ Peter Baum found that Plaintiff had the severe impairments of right L5-S1 hemilaminectomy/discectomy on December 2, 2010 with moderate stenosis at L2-3, mood disorder NOS, chronic pain disorder, anti-social personality disorder, and substance abuse disorder. (AR 19). The ALJ found that Plaintiff's mental impairments met the listings for 12.04 (depressive disorders), 12.08 (personality and impulse control disorders), and 12.09 (substance addiction disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that the Paragraph A criteria were satisfied for listings 12.04 and 12.08 based on Dr. Sherman's testimony and because Plaintiff reported anger and irritability, sleep disturbance, low energy, and decreased concentration. The ALJ also found that the Paragraph B criteria were satisfied because Dr. Sherman testified that Plaintiff would have at least two marked limitations (social functioning and concentration, persistence, or pace) when using alcohol or cocaine, and the ALJ determined that Plaintiff would have significant limitations in his ability to function in these areas when under the influence of substances. (AR 19–20). However, the ALJ concluded that if substance abuse was stopped, Plaintiff's mental impairments would cause no more than minimal limitations on his ability to work, and that there were "no significant objective medical findings in the record" to indicate that Plaintiff's mood disorder, chronic pain disorder, and anti-social personality disorder were severe in the absence of substance abuse. (AR 20–23). The ALJ did find that

Plaintiff's back problems would continue to cause more than minimal functional limitations in the absence of substance abuse. (AR 23).

The ALJ found that, if Plaintiff stopped the substance use, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (AR 25).

The ALJ found that, if Plaintiff stopped the substance use, he would have the RFC to perform a reduced range of sedentary work with no mental limitations: lift and carry 10 pounds frequently and occasionally, stand/walk 4 hours, sit 6 hours, never climb ladders, ropes, or scaffolds or crouch, occasionally climb stairs and ramps, balance, stoop, kneel, and crawl, avoid concentrated exposure to extreme cold or vibration, and avoid even moderate exposure to hazards and unprotected heights. (AR 24). The ALJ found that Plaintiff could not perform his PRW as a bouncer and bartender, but that if Plaintiff stopped the substance use, he could perform other work including addresser, document preparer, and call out operator. (AR 28–29). The ALJ concluded that substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use, and Plaintiff was therefore not disabled. (AR 29).

## III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to

the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d

1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Discussion

Plaintiff alleges numerous errors in the Commissioner's decision: First, that substantial evidence in the record does not support the ALJ's finding that Plaintiff has substance abuse disorder or that it is material to Plaintiff's disability. Second, that the ALJ erred in failing to consider the opinion of Plaintiff's mental health provider, N.P. Danker. Third, that the ALJ erred by failing to assign controlling weight to portions of treating physician Dr. Donnelly's opinion, and failing to provide specific and legitimate reasons to assign the opinion little weight. Fourth, that the ALJ erred in failing to find Plaintiff's mental health conditions non-severe at Step Two. Fifth, the ALJ failed to provide clear and convincing reasons to find Plaintiff's subjective symptom testimony was not credible. Sixth, substantial evidence does not support the finding that Plaintiff could do the three jobs testified to by the VE. And finally, that the ALJ failed to comply with the Appeals Council's order on remand. Plaintiff contends that, based on testimony by the VE, if the opinions from N.P. Danker and Dr. Donnelly were credited as true, then Plaintiff would be found disabled. Thus, remand for an immediate award of benefits is warranted.

Defendant concedes error on several points, but argues that the appropriate remedy is to remand this matter for further administrative proceedings because questions remain as to whether Plaintiff is in fact disabled.[4] Defendant specifically points to conflicting

---

[4] Defendant offers no argument to rebut Plaintiff's claims regarding the VE testimony on jobs available to Plaintiff or the Appeals Council's remand order, other than to conclusory

evidence regarding Plaintiff's physical and mental impairments during the time period at issue that Defendant contends is inconsistent with the disabling limitations assessed by N.P. Danker and Dr. Donnelly; thus, Defendant argues that these opinions cannot be credited as true nor can Plaintiff's subjective complaints be credited as true.

The Court finds that the ALJ erred by improperly crediting the testimony of the non-examining medical expert over the testimony of treating and examining sources, leading to error in finding that Plaintiff's substance abuse disorder was material to the disability determination and that Plaintiff would have no more than mild mental limitations in the absence of substance use. This finding is not supported by substantial evidence in the record, and the Court finds that this matter should be remanded for an immediate award of benefits.[5]

A.    Substance Abuse Disorder

ALJ Peter Baum found that Plaintiff was under a disability but ultimately concluded that Plaintiff was not disabled because substance abuse disorder was a contributing factor material to the determination of disability and Plaintiff would not be disabled if he stopped the substance use. (AR 17, 29). The Court finds that this was harmful error and will remand this matter for an award of benefits.

Pursuant to 42 U.S.C. § 423(d)(2)(C), an individual is not disabled "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." To determine whether the drug addiction or alcoholism ("DAA") is a contributing factor material to the determination of disability, the ALJ determines whether the claimant's other impairments would improve to the point of nondisability in the absence of the DAA. SSR 13-2p, 2013 WL 621536 at *7. The Ninth Circuit has made clear that the ALJ must first conduct the five-step

state that these issues do not implicate a remedy. Based on this non-response, the Court finds that Defendant concedes harmful error on these points.
[5] In light of the Court's conclusion that this matter should be remanded for an award of benefits based on the ALJ's harmful error in relying on the medical expert testimony to find that DAA was material to the disability determination and that Plaintiff had no more than mild mental impairments, the Court declines to address the other issues raised by Plaintiff in his appeal.

sequential analysis without separating out the impact of DAA. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If, and only if, the ALJ finds that the claimant is disabled and there is medical evidence of DAA, then the ALJ must evaluate whether the claimant would still be disabled if he stopped using drugs or alcohol. *Id.*; *see also Hoban v. Colvin*, 2016 WL 4059200, *3 (D. Or. July 27, 2016) ("<u>Bustamante</u> requires a two-step process."). If the remaining limitations would not be disabling after applying the sequential evaluation a second time, then the DAA is a contributing factor material to the determination of disability and the claim is denied. 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p, 2013 WL 621536 at *4.

In this case, the Appeals Council's remand order noted that ALJ Lauren Mathon found Plaintiff's history of substance abuse was a non-severe impairment. (AR 150). Plaintiff testified that he had been sober from methamphetamines and cocaine and that he stopped drinking when he attended the narcotic detox program. The Council stated that on remand, as needed, the ALJ "may obtain testimony from a medical expert to clarify the severity and limiting effects of the claimant's mental impairments with and without consideration of the substance abuse." (AR 150–51).

In his written decision, ALJ Peter Baum concluded that Plaintiff was under a disability, but that substance abuse disorder was a contributing factor material to the disability determination and therefore Plaintiff was not disabled. (AR 17, 29). The Court finds that this conclusion is not supported by substantial evidence in the record. The ALJ based his materiality finding solely on Dr. Sherman's testimony that Plaintiff's mental impairments would cause no more than mild limitations in the absence of DAA—the ALJ failed to note that not a single treating, examining, or consulting physician ever indicated that DAA was a concern during the relevant period, or that DAA was a factor impacting Plaintiff's physical or mental impairments.[6] Nor did the ALJ cite any evidence to support

---

[6] The state agency reviewing physicians also failed to find DAA was a concern: On initial review Plaintiff was found to have back disorder, affective disorder, and anxiety disorder (AR 103), but Dr. Fahlberg specifically stated that there was no evidence of any substance abuse disorder or DAA issue (AR 109). Dr. Anderson noted the same on reconsideration. (AR 124).

that DAA impacted Plaintiff's functionality in any way.

Moreover, as is evident from Dr. Sherman's testimony, she was either unable to review the entirety of the record, or was unprepared to testify as to all of the information in the record relating to Plaintiff's drug or alcohol use. Dr. Sherman testified that Plaintiff's last cocaine and alcohol use was in June or July 2010 and cited to exhibit 16-F. (AR 44). However, 16-F is Plaintiff's initial assessment from COPE on August 6, 2009—where Plaintiff admitted to using alcohol and cocaine as an outlet to relieve stress—and is therefore prior to Plaintiff's AOD of February 18, 2010. (AR 724). On at least two other occasions in 2012, Plaintiff reported to his providers that he last used cocaine and meth 8–9 years ago. (AR 905–06, 918). Further, the record reflects that while at times Plaintiff admitted to using alcohol occasionally,[7] he stopped drinking completely in February 2014 when he voluntarily attended an inpatient program to detox from his narcotic pain medications. (AR 80–81). Progress notes from appointments with Dr. Donnelly from 2010–2013 document that Plaintiff was not using alcohol or drugs.[8]

Dr. Sherman also stated that in 2012 a detox screen was positive for benzodiazepines and opiates, and while it was "conceivable" that the benzodiazepines[9] were prescribed, she did not have in her record that they were. (AR 44). The record reflects that Plaintiff's drug screen on July 31, 2012 found "no drugs of abuse detected" and the only positives were for Plaintiff's prescribed medications: Oxycodone, Duragesic (fentanyl patch), and Hydromorphone. (AR 867). A drug screen on October 11, 2013 was consistent with Alprazolam, Benzodiazepine, and Oxycodone; "this was a good sign" as it reflected

---

[7] Several of these instances are prior to Plaintiff's AOD: AR 580 (May 13, 2008 drinks socially); AR 548 (October 20, 2008 occasionally drinks); AR 626 (September 24, 2009 moderate use of alcohol); AR 511 (October 5, 2009 consumes 12 drinks per week); AR 689 (June 14, 2010 drinks a 12-pack a week); AR 450 (July 22, 2011 drinks beer twice a month); AR 371 (March 23, 2012 drinks occasionally); AR 911 (December 26, 2012 drinks on occasion).

[8] AR 386, 456, 459, 466, 472, 789, 795, 800, 805, 809, 813, 817, 821, 827, 829, 833, 837, 840, 845, 849, 853, 857, 989, 994, 998, 1003, 1008, 1013, 1017, 1023, 1027, 1033, 1038, 1044, 1048, 1053, 1058, 1063

[9] "Benzodiazepines are a class of medications that work in the central nervous system and are used for a variety of medical conditions, such as anxiety, seizures, and for alcohol withdrawal. . . . Common examples of benzodiazepines include alprazolam (Xanax), diazepam (Valium) and lorazepam (Ativan)." https://www.drugs.com/article/benzodiazepines.html

Plaintiff's prescribed medications. (AR 1125–26). Plaintiff's opening brief also notes numerous other drug screens that were negative for cocaine, alcohol, and methamphetamines. (Doc. 18 at 9).

In sum, other than citing to Dr. Sherman's testimony, the ALJ failed to identify any evidence in the record establishing that DAA materially contributed to Plaintiff's impairments. The ALJ drew on Dr. Sherman's testimony to manufacture a materiality finding that is not supported by, and was never indicated by, the treating physician record, and thereby concluded that Plaintiff would not be disabled but for his alleged drug and alcohol abuse. This is wholly insufficient to constitute substantial evidence. *See Hoban*, 2016 WL 4059200 at *6 (SSR 13-2p "makes explicit that because medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder.").

B.    Medical Opinions

The Court further finds that the ALJ committed harmful error by crediting the testimony of Dr. Sherman over the testimony of Plaintiff's treating providers to find that Plaintiff would have no more than minimal mental impairments in the absence of DAA.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. Lastly, the opinion of a non-examining physician cannot, by itself, be substantial evidence to reject an examining or treating physician opinion. *Lester*, 81 F.3d at 830–31.

The case of *Ingram v. Barnhart*, 72 Fed.Appx. 631 (9th Cir. 2003), is instructive. There, the Ninth Circuit held that substantial evidence did not support the ALJ's DAA materiality finding because the ALJ "improperly credited the testimony of non-examining sources over the testimony of examining sources, leading to error in the identification of Ingram's severe impairments and in the determination of whether Ingram would still be considered disabled if she stopped using drugs and alcohol." *Id*. at 632. In that case, the non-examining physician opined that the claimant would have only moderate limitations in her ability to deal with the public without DAA. However, one examining physician found the claimant's ability to respond appropriately and tolerate normal work pressures was severely limited by anxiety, and another physician rated the claimant's global illness as severe and opined that her mental limitations were exacerbated by, but not caused by, DAA. The court found it was "abundantly clear" that the ALJ erroneously credited the non-examining physician's opinion over the examining physician opinions, and that, examining the record as a whole, if the examining physician opinions were properly credited, the claimant would continue to suffer from disabling mental health issues even if her DAA was successfully treated. (AR 638). The court concluded that a remand for an award of

benefits was warranted because the record conclusively established that the claimant was disabled without considering the effects of DAA on her ability to work.

In the present case, the ALJ erroneously credited Dr. Sherman's testimony over the treating physician record. In contrast to Dr. Sherman's opinion that Plaintiff would have only mild impairments without DAA and possibly no impairments if he took psychiatric medications, there are hundreds of pages of treatment notes from COPE spanning from 2009–2016 documenting Plaintiff's struggles with anger, depression, anxiety, and suicidal thoughts. The record also documents that Plaintiff tried numerous psychiatric medications with no relief—they either did not work or made Plaintiff feel worse. Nurse Practitioner Lori Danker, one of Plaintiff's treating providers from COPE, opined that Plaintiff had numerous mild, moderate, and marked limitations, but no where did she indicate that DAA impacted these limitations in any way. (AR 1361–63). In fact, the ALJ wholly failed to mention Danker's opinion.[10] If this testimony were properly credited, the record compels

---

[10] While Danker is not considered an acceptable medical source, opinions from other sources must still be evaluated and the ALJ may discount their testimony only by giving reasons germane to each witness. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered acceptable medical sources."). Nurse practitioners, physician assistants, and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). Pursuant to SSR 06-03p, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Thus, as one of Plaintiff's treating mental health providers, Danker qualifies as an "other source" that can provide evidence about the severity of Plaintiff's impairments and how they affect his ability to work, and the ALJ was required to evaluate her opinion accordingly.

The ALJ must evaluate medical opinions according to the requirements set out in 20 C.F.R. § 404.1527(c): (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the consistency of the opinion and the record as a whole; (4) whether the physician is a specialist; and (5) other factors that would support or contradict the opinion. While the Commissioner is not required to "discuss *all* evidence[,]" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted). The ALJ's failure to even mention Danker's opinion wholly fails to meet this standard. *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) (it is error for ALJ to ignore a treating doctor and his or her notes without even mentioning them, and "a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Because the ALJ did not discuss, or give legally sufficient reasons to reject Danker's opinion, the

1  the conclusion that Plaintiff's mental impairments were severe, would cause more than

2  minimal limitations on his ability to work, and would persist in the absence of DAA. *See*

3  *Ingram*, 72 Fed.Appx. at 636.

4      In sum, considering the extensive treatment record documenting Plaintiff's mental

5  health struggles, substantial evidence does not support the ALJ's conclusion that there were

6  "no significant objective medical findings in the record" to indicate that Plaintiff's mood

7  disorder, chronic pain disorder, and anti-social personality disorder were severe in the

8  absence of substance abuse. (AR 20–23).[11] Again, the Court must emphasize the fact that

9  in nearly 1600 pages of evidence, not once did a treating, examining, or state agency

10  reviewing physician opine that Plaintiff had an active problem with drugs or alcohol of

11  such severity that it materially impacted his physical or mental impairments, or that any of

12  Plaintiff's conditions would improve in the absence of substance use. Here, as in *Ingram*,

13  the ALJ improperly credited Dr. Sherman's testimony over the extensive treating physician

14  testimony, leading to error in determining that Plaintiff would have no more than minimal

15  mental limitations in the absence of DAA and was therefore not disabled. *See Ingram*, 72

16  Fed.Appx. at 637–38; *see also Cothrell v. Berryhill*, 742 Fed.Appx. 232, 235 (9th Cir. July

17  18, 2018) (ALJ's conclusion that DAA was material to disability was not supported by

18  substantial evidence where ALJ relied on statements of non-examining doctor who stated

19  claimant "had drug problems for a long time" based on report that claimant attended

20  inpatient program over 20 years before AOD, doctor recognized record on nature and

21  extent of DAA was inconsistent and vague, doctor opined that claimant had no more than

22  mild limitation in ADL, and doctor never opined on extent of DAA or its materiality; ALJ

23  ——————————————
Court credits the opinion as a matter of law. *See Lester*, 81 F.3d at 834.

24  [11] No physician other than Dr. Sherman opined that Plaintiff's mental impairments were mild or did not impact his ability to work. In addition to the COPE records, there are also dozens of progress notes from Plaintiff's PCP, Dr. Donnelly, from 2010–2013

25  documenting Plaintiff's chronic pain (the record reflects that Plaintiff has been seen by numerous providers from the time of his industrial injury in 2008 through at least 2016 for

26  treatment of his back condition), as well as his mental health struggles. Integrative Pain Center of Arizona assessed Plaintiff as very low functioning with a GAF score of 55, noted

27  that he had a "very prominent behavioral/psychiatric history," and was a passive danger to staff. (AR 905–06). Even the psychological consultant, Dr. Johnson, diagnosed depressive

28  disorder, likely developed as a result of chronic health problems, but she did not opine that DAA was a factor affecting Plaintiff's mental impairment. (AR 615).

also relied on lay witness statements, but witnesses never mentioned DAA; ALJ offered no other basis for materiality finding); *Schanzenbaker v. Colvin*, 2014 WL 943351 (E.D. Wash. Mar. 11, 2014) (ALJ erred by failing to evaluate which of claimant's limitations would remain if he stopped the substance use and instead summarily relied on medical expert's testimony that claimant would not be disabled without DAA; ALJ's determination that DAA materially contributed to disability was not supported by substantial evidence where medical expert's testimony was contradicted by treating and examining physician testimony that abstinence from DAA would not improve claimant's ability to function in the workplace); *contra Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (substantial evidence supported DAA materiality finding where physician testified there was no reason to believe that claimant's cirrhosis would not have improved if claimant quit drinking, and psychologist opined mental impairments were likely caused by excessive alcohol consumption and would resolve if claimant stopped drinking); *Guerrrera v. Colvin*, 2015 WL 875378 (D. Ariz. Mar. 2, 2015) (substantial evidence supported DAA materiality finding where record showed claimant's mental functioning was significantly improved when sober, claimant had drug-seeking behavior and frequently tested positive for substances, and claimant admitted to hospital hopping to obtain drugs); *Strand v. Barnhart*, 2008 WL 5000119 (D. Ariz. Nov. 20, 2008) (substantial evidence supported DAA materiality finding where record illustrated history of alcohol abuse: claimant had multiple attempts at detox treatment but was not truthful about her drinking, record documented relapse, multiple physicians opined claimant would not be disabled absent alcoholism and could complete a work-week satisfactorily if she were sober, after 7 month period of sobriety claimant had no or only mild mental limitations, and failure to comply with psychiatric treatment and medication was at times related to claimant's drinking).

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record

as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593. Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*. (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted); *see also Lester*, 81 F.3d at 834.

Based on the foregoing discussion, the Court finds that the ALJ's conclusion that Plaintiff's DAA was material to the disability determination is not supported by substantial evidence in the record, and that the ALJ committed harmful error by crediting the testimony of Dr. Sherman over the testimony of Plaintiff's treating providers to find that Plaintiff would have no more than minimal mental impairments in the absence of DAA. The Court affirms the ALJ's finding that Plaintiff's psychological impairments meet Listings 12.04 and 12.08, but reverses the ALJ's finding that DAA was material to Plaintiff's disability. The Court further finds that the record has been thoroughly developed for the relevant period and there are no outstanding issues that must be resolved. If the ALJ had properly considered the correct legal standards and properly considered the medical evidence of record, it is clear that the ALJ would have been required to find Plaintiff disabled. *See* 20

C.F.R. § 404.1509 (if a claimant's impairment meets or medically equals a listed impairment, the claimant is disabled).[12] Accordingly, the Court finds that remand for an award of benefits is appropriate.

Furthermore, it has been almost 7 years since Plaintiff applied for benefits. While this is not a reason to remand for an award of benefits, the Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke*, 379 F.3d at 595 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988)). Thus, because substantial evidence in the record does not support the ALJ's finding that DAA was material to the disability determination, and because all three factors favoring remand for an award of benefits are satisfied, remanding for further administrative proceedings "would serve no useful purpose and would unnecessarily extend [Plaintiff's] long wait for benefits." *Benecke*, 379 F.3d at 595.

## VI. Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** remanding this matter for an award of benefits. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 4th day of March, 2019.

_____
Eric J. Markovich
United States Magistrate Judge

---

[12] The Court further notes that had the ALJ properly considered N.P. Danker's opinion, it is clear from VE Farmer's testimony that Plaintiff would be disabled. *See* AR 57–59 (when Plaintiff's attorney included limitations from Danker's opinion in the hypothetical, Farmer testified such a person would be unemployable).